UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MURPHY MEDICAL ASSOCIATES, LLC, et al.,<br><br>                          Plaintiffs,<br><br>                v.<br><br>1199SEIU NATIONAL BENEFIT FUND,<br><br>                          Defendant. | 23 Civ. 6237 (DEH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

This case involves the alleged failure by the 1199SEIU National Benefit Fund ("the Fund" or "Defendant") to pay Plaintiffs Murphy Medical Associates, LLC, Diagnostic and Medical Specialists of Greenwich, LLC, and Steven A.R. Murphy ("Murphy Medical" or "Plaintiffs") for COVID-19 testing they performed for the Fund's members. For the reasons discussed herein, Defendant's Motion to Dismiss, ECF No. 64, is **GRANTED**.

## BACKGROUND

### I. Procedural History

On January 13, 2022, Plaintiffs filed their original Complaint in the District of Connecticut, and on April 17, 2022, Defendant filed its first Motion to Dismiss. *See* ECF No. 1, 17. On July 25, 2022, the Court held oral argument on Defendant's fully briefed motion, which it granted in full on March 24, 2023. *See* ECF Nos. 44, 48. However, it dismissed one of Plaintiffs' claims without prejudice and permitted Plaintiffs to amend their pleadings, instructing them either to "include allegations regarding the manner in which Murphy Medical has exhausted its administrative remedies or [plausibly allege] the factual bases for a claim that it should be excused from doing so." *See Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 22 Civ. 64, 2023 WL 2631811, at *5 (D. Conn. Mar. 24, 2023). The Court further

advised Plaintiffs "that if an Amended Complaint is filed, the Court will issue an Order to Show Cause as to why this matter should not be transferred to either the Southern or Eastern Districts of New York by virtue of the forum selection provisions of the Fund's Plan." *Id.* at *7.

On May 15, 2023, Plaintiffs filed their Amended Complaint, *see* Am. Compl., ECF No. 51, and in lieu of answering, Defendant filed the Motion to Dismiss now before the Court, *see* ECF No. 64.

On May 31, 2023, the Court ordered Plaintiffs "to show cause before June 30, 2023 as to why venue in the District of Connecticut is proper." ECF No. 54.  On June 27, 2023, Plaintiffs consented to transfer, *see* ECF No. 55, and this case was transferred to this District on July 19, 2023, *see* July 19, 2023 Min. Entry.  This case was reassigned to the undersigned on October 20, 2023.  *See* Oct. 20, 2023 Min. Entry.

## II. Factual Background

The Court assumes familiarity with the background facts of this case, which are summarized further by the Order granting Defendant's first motion to dismiss.  *See Murphy Med. Assocs.*, 2023 WL 2631811.  The following additional facts, which are drawn from Plaintiffs' Amended Complaint and documents incorporated by reference therein, are relevant to—and assumed to be true for the purposes of—this motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[1]

### A. Allegations Against the Fund

Plaintiffs' allegations against the Fund broadly fall within one of the following three categories.

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses unless otherwise indicated.  All references to Rules are to the Federal Rules of Civil Procedure.

*Failure to Explain the Fund's Administrative Appeals Process*. Plaintiffs attach to their Amended Complaint examples of Explanations of Payment ("EOPs") sent to them by the Fund. These EOPs did not justify the denial of payments to Murphy Medical, and they "did not provide any detailed instruction regarding an administrative appeal process." Am. Compl. ¶¶ 109-12. After Plaintiffs followed up with the Fund and provided further documentation, Defendant continued to decline to justify the claim denials. *See id*. ¶¶ 113-15. These correspondences did not communicate that there was an additional appeal process. *See id.* ¶ 116.

*Failure to Pay in Full or Timely Respond to Plaintiffs' Claims*. Plaintiffs allege that after they provided Fund members with "covered and medically necessary services," and "timely and properly submitted claims for reimbursement to the Fund," the Fund did "not pay the claims at all, pa[id] the claims at a far reduced amount, or ignore[d] the very submission of the claims." *See id*. ¶¶ 96-97. Plaintiffs allege that Defendant's failure to timely respond to Plaintiffs' claims violated the Employee Retirement Income Security Act of 1974 ("ERISA") regulation requiring plan administrators to notify claimants of a plan's adverse benefit determination no later than 30 days after receipt of the claim. *See id.* ¶ 99 (citing 29 C.F.R. § 2560.501-1 (f)(2)(iii)(B)).

*Concealing Information*. Plaintiffs allege that the Fund "directed its members to conceal the Fund's health plan information from the Murphy Practice when presenting for COVID-19 testing or related services." *Id*. ¶ 135. Some members "admitted to Murphy Practice staff that the Fund had instructed them to not provide their respective health plan information." *Id.* ¶ 137.

B. **Exhaustion Provision**

Plaintiff incorporates by reference the Fund's Summary Plan Description ("SPD"), a guidebook for members that explains, *inter alia*, the process for appealing any adverse determination by the Fund. *See id*. ¶¶ 107-08; *see also* Poulous Aff. Ex. A ("2015 SPD"), ECF No. 66-1. The Plan describes the Fund's exhaustion policy as follows:

3

> **NOTE:** All claims by you, your spouse, your children or your beneficiaries against the Benefit Fund are subject to the Claims and Appeal procedure [described below]. *No lawsuits may be filed until all steps of these procedures have been completed and the benefits requested have been denied in whole or in part.*

2015 SPD at 167 (emphasis added).[2]  As part of the Fund's "Appeals Procedure," before filing a lawsuit, a Fund member seeking to dispute a "totally or partially denied" claim is instructed to "request an Administrative Review of such denial within 180 days after the receipt of the denial notice."  *Id*.  Next, if the Administrative Review also denies the claim in whole or in part, the member has the right to "make a final appeal directly to the Appeals Committee of the [Fund's] Board of Trustees."  *Id*. at 168.  Non-participating providers "do not have an independent right to appeal an adverse benefit decision" on behalf of a Fund participant but may be authorized to do so.  *Id*. at 169.  Any so-authorized non-participating provider "stand[s] in [the] shoes" of Fund participants and is granted "no greater rights than" any other "participant appealing under the terms of [the SPD]."  *Id*.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.

---

[2] All page numbers are in reference to ECF, and not internal, page numbers.  The 2020 and 2021 SPDs contain substantially the same information.  *See* ECF Nos. 66-2 to 66-3.  For ease of reference, the Court cites only the 2015 SPD here.

4

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. While all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*.

"The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses . . . and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). However, a motion to dismiss based on an affirmative defense is permissible "where the facts necessary to establish the defense are evident on the face of the complaint." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018).

A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Even if a document is not incorporated in a complaint by reference, "the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). In addition, a court may consider matters of which judicial notice may be taken on a Rule 12(b)(6) motion to dismiss. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## DISCUSSION

The previous decision in this case granting Defendant's first motion to dismiss cautioned that while Plaintiffs would be permitted to replead their ERISA claim, they were required to "include allegations regarding the manner in which Murphy Medical has exhausted its administrative remedies or [in the alternative, plausibly allege] the factual bases for a claim that it should be excused from doing so." *See Murphy Med. Assocs.*, 2023 WL 2631811, at *5. As discussed further below, Plaintiffs have not done so. Accordingly, Plaintiffs' last surviving claim is dismissed.

### A. Exhaustion of Administrative Remedies

Plaintiffs fail to plausibly allege that they exhausted administrative remedies prior to filing suit.

The administrative exhaustion "requirement was intended to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Given these important purposes, "the federal courts—including this Circuit—have recognized a firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006). Under that policy, a plaintiff must pursue "those administrative [processes] provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594. While the failure to exhaust administrative remedies is an affirmative defense, *see Paese*, 449 F.3d at 446, courts have nevertheless dismissed claims where plaintiffs fail to plead, or plead only in conclusory fashion, that they have exhausted their administrative remedies. *See Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 608-09 (S.D.N.Y. 2009) (collecting cases); *see also Peppiatt v Aetna Life Ins.*

6

*Co.*, 2017 Civ. 2444, 2017 WL 6034641, at *5 (EDNY Dec. 4, 2017) ("[C]ourts routinely dismiss ERISA claims . . . on a [Rule] 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies") (collecting cases).

Here, following the Fund's denial of their claims, Plaintiffs, on behalf of Fund members, were required to: (1) request an Administrative Review, and (2) if that review was unsuccessful, appeal to the Fund's Board of Trustees Appeals Committee *before* filing suit in federal court. *See* 2015 SPD at 1667-68. The appeals process set forth by the Fund was not optional: the clear terms of the Fund's policy state that "[n]o lawsuits may be filed *until all steps of these procedures have been completed* and the benefits requested have been denied in whole or in part." *Id*. at 167 (emphasis added).

Nowhere in the Amended Complaint do Plaintiffs purport to have taken either of those steps. *See generally* Am. Compl. Moreover, in their opposition brief, Plaintiffs do not dispute Defendant's argument that Plaintiffs failed to take any step in the "Fund's delineated appeals process." Mem. of L. in Supp. of Def.'s Mot. to Dismiss Am. Compl. 10-12, ECF No. 67. *See generally* Pls.' Mem. of L. in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Br."), ECF No. 72 (declining to refute Defendant's argument). In so doing, Plaintiffs concede that they did not exhaust administrative remedies prior to filing suit. *Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief.").

Plaintiffs appear to suggest that by corresponding with the Fund following the Fund's rejection of their claims, they in effect "appealed" every claim. *See* Am. Compl. ¶¶ 117, 126 (describing Plaintiffs' correspondence with the Fund as an appeal of "every claim which the Fund has either denied or partially reimbursed."). But by merely following up with the Fund about their claims, Plaintiffs did not exhaust any delineated step in the Fund's appeals process.

7

The "relevant plan or policy," *Kennedy*, 989 F.2d at 594, as set forth by the SPD, clearly outlined the Fund's appeals process, and Plaintiffs fail to allege that they attempted even the first step. *See generally* Am. Compl.

Finally, Plaintiffs allege without further elaboration that they have "appealed every claim submitted to the Fund, which were summarily denied." *Id.* at ¶ 5. While the Court must construe all of a plaintiff's allegations as true and resolve all inferences in the plaintiff's favor for the purposes of resolving a motion to dismiss, *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), Plaintiffs cannot meet their burden simply by relying on "conclusory statements without any supporting facts," *see Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014). Plaintiffs have failed to plausibly allege that they exhausted administrative remedies before filing suit, as they were required to do.

While failure to exhaust administrative remedies is an "affirmative defense," here, it appears "on the face of the complaint," and thus warrants dismissal, as Plaintiffs "plead[] no facts suggesting any effort to exhaust the remedies *available through* [the applicable] *ERISA administrative plan*." *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 295-96 (E.D.N.Y. 2021) (emphasis in original).

**B. Futility**

Given their failure to exhaust, Plaintiffs must, in order to save their ERISA claims, plausibly allege that they were "excused from" following the Fund's administrative process. *See Murphy Med. Assocs.*, 2023 WL 2631811, at *5. As discussed below, they cannot.

Where a plaintiff makes a "clear and positive showing that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Kennedy*, 989 F.2d at 594; *see also Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006)

("Unless a clear and positive showing is made that it would be futile for the claimant to pursue her claim through the internal claims process, that remedy must be exhausted prior to the institution of litigation."). It bears emphasis, however, that "[t]he standard for demonstrating futility is very high." *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, 520 F. App'x 15 (2d Cir. 2013). Far from making a "clear and positive showing," Plaintiffs rely on conclusory statements to attempt to demonstrate that it would have been futile to exhaust administrative remedies. Even on a motion to dismiss, this cannot suffice. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court addresses Plaintiffs' primary arguments below.

   ***Failure to Explain the Fund's Administrative Appeals Process***. Plaintiffs do not allege that the Fund does not inform *its members* of its exhaustion policy. Nor can they; as discussed *supra*, the SPD clearly describes the process members must follow to appeal adverse decisions. *See* 2015 SPD at 1667-68. Instead, Plaintiffs argue that the Fund did not include appeals information in the EOPs provided to Plaintiffs. As a preliminary matter, the attached EOP is from the 1199SEIU Greater New York Benefit Fund, which is not a named Defendant in this action. *See* Am. Compl. Ex. C at 2, ECF No. 51-3 (listing the name and address of 1199SEIU Greater New York Benefit Fund). It is therefore not clear to the Court how this EOP is material to this action. Assuming *arguendo* that it is, the Court is unaware of any authority to support a claim that an EOP's failure to describe a fund's appeals process somehow renders adherence to that appeals process futile. *See Kesselman*, 668 F. Supp. 2d at 609 (declining to hold that the plaintiff's lack of awareness of the relevant plan excused her compliance with it, although the "plaintiff argue[d] that she was never told of her right and/or obligation to follow the detailed grievance procedure set forth in her plan.").

9

***Failure to Pay in Full or Timely Respond to Plaintiffs' Claims***.  Plaintiffs allege that the Fund's illegal non-compliance with ERISA claim procedures rendered exhaustion futile.  Pls.' Br. at 14-15.

Plaintiffs allege without any factual support that the Fund's denials of their claims were reflexive or automatic.  Am. Compl. ¶¶ 129, 155.  They undermine this claim by attaching an exhibit demonstrating that numerous claims were in fact *approved* and reimbursed by the Fund, as well as by attaching correspondence in which the Fund requests further documentation of members' claims as part of the Fund's review process.  *Id.*  Exs. A, D.  "Plaintiffs' conclusory allegation that any attempt at exhausting their administrative remedies would have been futile because of Defendants' blanket denial of the claims is . . . insufficient to withstand a motion to dismiss."  *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 22 Civ. 33, 2024 WL 988162, at *3 (D. Conn. Mar. 7, 2024).

Plaintiffs also allege that Defendant "rarely, if ever" complied with ERISA's timeframes for processing its claims.  Am. Compl. ¶ 100.  Plaintiffs once again provide no factual support for this assertion.  Again assuming *arguendo* that Plaintiffs' attached EOP has any bearing on this case, Plaintiffs' reliance on it nonetheless fails to support this allegation, as the EOPs do not state the date the claims were received, which is when the clock starts on ERISA's mandated claim processing timeframes.  *See* 29 C.F.R. § 2560.503-1(f)(2)(iii)(B) ("In the case of a post-service claim, the plan administrator shall notify the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination within a reasonable period of time, *but not later than 30 days after receipt of the claim.*") (emphasis added).

***Concealing Information***.  Plaintiffs allege that the Fund "actively instructed its members to conceal health insurance information from the Murphy Practice."  Pls.' Br. at 15.  It is unclear to the Court how this assertion, even if true, is relevant to whether it would be futile to follow the

10

appeals process outlined by the Fund. Moreover, it is once again undermined by the Complaint and its attachments, as members received SPDs—which in turn provided members with information on how to submit a claim for reimbursement—and Plaintiffs provide documentation that numerous claims were in fact submitted and processed. *See generally* 2015 SPD; Am. Compl. Ex. A, ECF No. 51-1.

Far from making a "clear and positive showing" that it would be futile to pursue their claims through the Fund's internal claims process, *Eastman Kodak Co.*, 452 F.3d at 219, Plaintiffs have "failed to allege any facts from which the Court might infer that [their] pursuit of administrative remedies under the plan at issue would be futile." *Kesselman*, 668 F. Supp. 2d at 609. Accordingly, Plaintiffs were required to exhaust administrative remedies prior to filing suit, and their failure to do so warrants dismissal. *See Greifenberger v. Hartford Life Ins. Co.*, 131 Fed. App'x 756, 758 (2d Cir. 2005) (upholding dismissal of an ERISA § 502(a)(1)(B) claim for failure to exhaust administrative remedies).

### C. Plaintiffs' Alternative Arguments

Plaintiffs argue, without any support, that the SPD is somehow irrelevant, because the Families First Coronavirus Response Act ("FFCRA") directed insurance companies to reimburse providers of COVID-19 testing. The Court is aware of no authority suggesting that the FFCRA nullifies internal processes for appealing claims. Moreover, the previous decision granting Defendant's first motion to dismiss—which is law of the case—relied on the SPD in deciding Defendant's first motion to dismiss, reflecting the Court's understanding that, far from being irrelevant, the SPD's terms are dispositive as to whether administrative exhaustion is required. *See Murphy Med. Assocs.*, 2023 WL 2631811, at *4; *cf. Delville v. Firmenich Inc.*, 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and

compelling reasons militate otherwise."). Plaintiffs' attempt to salvage their ERISA claim with this alternative argument fails.

### D. Leave to Amend

Finally, Plaintiffs seek leave to amend their pleadings a second time. That request is denied. "Although leave to amend should be freely given 'when justice so requires,' it is 'within the sound discretion of the district court to grant or deny leave to amend.'" *Lopez v. Stop & Shop Supermkt. Co. LLC*, No. 19 Civ. 9913, 2020 WL 4194897, at *2 (S.D.N.Y. July 21, 2020) (quoting Fed. R. Civ. P. 15(a)(2) and *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Here, Plaintiffs decline to explain how they intend to cure any deficiencies with their pleadings. *See* Pls.' Br. 21 (requesting leave to amend without elaboration). As discussed throughout this opinion, Plaintiffs have already failed once to cure the original Complaint's deficiencies with respect to exhaustion. "A court may deny leave to amend where the plaintiff has already had the opportunity to amend its Complaint, and there is no indication that amendment would not be futile." *Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 326 (S.D.N.Y. 2016). Leave to amend is therefore properly denied here, as "granting leave to amend is unlikely to be productive." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129 (2d Cir. 1993).

### CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss Plaintiffs' Amended Complaint is **GRANTED**. Given Plaintiffs' failure to cure deficiencies already identified by the Court, their Amended Complaint is now dismissed with prejudice.

The Clerk of Court is directed to terminate ECF No. 64 and to close the case.

SO ORDERED.

Dated: June 12, 2024
       New York, New York

_____
DALE E. HO
United States District Judge
